# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF a Blue 32 GB Motorola Moto G Play Model MC36E Cellular Telephone IMEI: 351647110692061 currently located and securely stored at the St. Louis County Police Department at 7900 Forsyth Blvd, Clayton, MO 63105 within the Eastern District of Missouri | ) ) ) ) ) | **FILED UNDER SEAL**<br>4:25 MJ 6006 PLC<br>SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

## APPLICATION FOR A SEARCH WARRANT

I, Amy Erwin, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the Eastern District of Missouri, there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

XX evidence of a crime;
XX contraband, fruits of crime, or other items illegally possessed;
XX property designed for use, intended for use, or used in committing a crime;
a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

Title 18, United States Code, Section 2259A

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

✓ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _______) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct.

Det. Amy Erwin
*Applicant's signature*
Amy Erwin, TFO, FBI
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: January 23, 2025

Patricia L. Cohen
*Judge's signature*

City and State: St. Louis, Missouri

Honorable Patricia L. Cohen, U.S. Magistrate Judge
*Printed name and title*
AUSA: JILLIAN ANDERSON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A Blue 32 GB Motorola Moto G Play Model MC36E Cellular Telephone IMEI: 351647110692061 securely stored in the St. Louis County Police Dept. within the Eastern District of Missouri. | No. 4:25 MJ 6006 PLC<br><br>**FILED UNDER SEAL**<br><br>SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I, **Amy Erwin,** being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an electronic device – described in Attachment A, which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. This Affiant, Detective Amy Erwin, DSN 3444, has been employed as a Police Officer for more than 22 years, and is currently assigned as a Detective to the Division of Criminal Investigation's Special Investigations Unit of the St. Louis County Police Department. I am also a Task Force Officer (TFO) for the FBI. During this time, this affiant has had numerous contacts and dealings with informants, other police officers, individuals known to possess and sell obscene material, as well as subjects known to possess, distribute, and manufacture child pornographic images. This affiant has received specialized training in computer-based investigations. This affiant has also received training in internet crimes against children from the National Center for Missing and Exploited Children (NCMEC) as well as attended the Internet

Crimes Against Children's (ICAC) Investigative Techniques Training Program. This affiant has assisted in numerous investigations and search warrants relative to the crimes of manufacturing, possession, and the distribution of child pornography. This affiant is also familiar with investigating Cyber-tip reports, conducting on-scene interviews, and "knock and talk" investigation techniques.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of child pornography trafficking laws in Title 18, United States Code, Section 2259A have been committed by SHANNON ROLLINS (ROLLINS) and other persons unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

**LOCATION TO BE SEARCHED AND IDENTIFICATION OF THE DEVICE**

5. The property to be searched is a Blue 32 GB Motorola Moto G Play Model MC36E Cellular Telephone IMEI: 351647110692061 (hereinafter "the Device"). The Device is currently located and securely stored at the St. Louis County Police Department at 7900 Forsyth Blvd, Clayton, MO 63105 within the Eastern District of Missouri.

6. The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

7. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. A wireless telephone may have wireless connection capabilities such as Wi-Fi and Bluetooth.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of

flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication Devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as **a** wireless telephone, digital camera, portable media player, GPS navigation Device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the **Device**.

## PROBABLE CAUSE

9. The Device is currently in the lawful possession of the St. Louis County Police Department (hereinafter the "investigative agency"). It came into the investigative agency's possession in the following way: on February 16th, 2022, this affiant prepared a St. Louis County search warrant for the residence located at 5416 Hamilton Ave. in St. Louis, MO 63136. The search warrant, cause no. 22SL-MC00258, was subsequently presented to and granted by the Honorable Judge Albus of Division 19 of the Circuit Court of the County of St. Louis in the State of Missouri. The search warrant was executed on February 16, 2022, and, among other items, the Device was seized pursuant to the search warrant that authorized the seizure and search of, among other items, cellular telephones and computers located within the residence at 5416 Hamilton Avenue in St. Louis, MO 63136. The search warrant authorized the search and seizure of said cellular telephones and computers for evidence of the commission of a crime and contraband consisting of child pornography. Therefore, while the investigative agency might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

10. In my training and experience, I know that the device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the device first came into the possession of the investigative agency.

11. In December of 2021, Sergeant Brian Shanika, DSN 2976, of the St. Louis County Police Department's Special Investigations Unit, advised this affiant of a Cyber-Tip received from the National Center for Missing and Exploited Children (NCMEC). The Cyber-Tip, contained in Cyber Tipline Report #96532238, was reported to NCMEC on July 26th, 2021, at 18:25:32 hours (UTC).

12. Per Cyber-Tip #96532238, on approximately July 25th, 2021, at 18:25:32 hours (UTC), personnel of Dropbox, Inc., detected a Dropbox account registered with the name of "Ron Rollins" and e-mail address of "rollins4028@gmail.com" that had uploaded 1 video file of suspected child pornography. The Cyber-tip further indicated that the account had been logged as being accessed by a user utilizing a device and/or devices with the Internet Protocol (IP) address of 174.85.0.236 on February 16th, 2021, at 13:06:34 hours (UTC). The Cyber-Tip lastly advised Dropbox's personnel had viewed the file uploaded to the Dropbox account and determined it was likely a file constituting child pornography.

13. This affiant subsequently viewed the video file uploaded to the Dropbox account registered with the name of "Ron Rollins" and email address of "rollins4028@gmail.com". Upon viewing the file, this affiant confirmed it as a file depicting child pornography. This file is as follows:

FILE NAME: ! !New2010[MB]Man boy 10yo anal Fuck private.avi

DESCRIPTION: A video file depicting a preadolescent male engaged in anal sexual intercourse with an apparent adult male.

14. On December 2nd, 2021, a subpoena was sent to Charter Communications, INC., for user/subscriber information, to include method and type of payment, for the IP address of 174.85.0.236 assigned on February 16th, 2021, at 13:06:34 hours (GMT). On December 10th, 2021, a response was received from Charter Communications, INC., advising the IP address of 174.85.0.236 had been assigned to a Charter Communications account, account #8345780620344576, from November 21st, 2020, at 22:13 hours to December 7th, 2021, at 16:19 hours. The subpoena response further advised that this account was registered to a Shannon Rollins with a service address of 5416 Hamilton Ave. in Jennings, MO 63136-3529 and listed telephone number of (314) 688-3320 and email address of "lookingforagiga.s.a.p@gmail.com".

15. On February 8th, 2022, this affiant conducted an Ameren UE utilities inquiry for utility services registered to the residence located at 5416 Hamilton Ave. in St. Louis, MO 63136. The inquiry indicated utility services for the residence were actively registered to a Shannon Rollins since November of 2020 with a listed telephone number of (314) 688-3320 and email address of "lookingforagiga.s.a.p@gmail.com".

16. This affiant next conducted a computer investigation of individuals named Shannon Rollins residing within the Missouri area. During this investigation, this affiant discovered only one individual, a male with a date of birth of xx/xx/1971 and social security number of xxx-xx-4346, who was registered with the Missouri Department of Revenue with the name of Shannon Rollins. This affiant proceeded to conduct a computer investigation of this particular individual, during which time this affiant discovered this person, identified as Shannon Jerome Rollins, was a sex offender required to register with the Missouri Highway Patrol for the

2011 conviction of the offense of Furnishing Pornography to Minor, the victim of whom appeared to be a 10-year-old female.

17. Based upon the information indicating Shannon Jerome Rollins was required to register various information as part of his sex offender registration, this affiant acquired his most recent registration submission. During a review of the registered information, this affiant noted the following:

- Shannon Jerome Rollins was required to register every six months as part of the requirement for his registration as a sex offender with the Missouri Highway Patrol. His most recent registration submission at that time was completed on June 28th, 2021.
- Shannon Jerome Rollins listed his current home address as 4100 Carrollton Ct., Apt #B, in Bridgeton, MO 63044-1771.
- Shannon Jerome Rollins listed his current mobile phone number as (209) 737-3002.
- Shannon Jerome Rollins listed only a single email address, which he identified as "lookingforgiga.s.a.p@gmail.com".
- Shannon Jerome Rollins registered the possession of only one "internet identifier" or online/social media account, which he identified only as a Facebook account.
- Shannon Jerome Rollins identified himself as having a social security number of "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".
- Shannon Jerome Rollins identified himself as having only a single mailing address, which he registered as 4100 Carrollton Ct., Apt B, in Bridgeton, MO 63044-1771.

18. After completing a review of Shannon Jerome Rollins's most recent sex offender registration information, this affiant compared it to the information contained within CyberTip #96532238, as well as the information provided for the account holders for the Charter and Ameren UE accounts for services at the residence located at 5416 Hamilton Ave. During this comparison, this affiant noted the following:

- The last four digits of Shannon Jerome Rollins' social security number, "4346", were used to register the Ameren UE utility services for the residence located at 5416 Hamilton Ave. in St. Louis, MO 63136.
- The email provided in Shannon Jerome Rollins' sex offender registration information, "lookingforgiga.s.a.p@gmail.com", had been used to register the accounts for both the Ameren UE utility services and Charter internet services for the residence located at 5416 Hamilton Ave. in St. Louis, MO 63136.
- The same phone number of (314) 688-3320 had been used to register the accounts for both the Ameren UE utility services and Charter internet services for the residence located at 5416 Hamilton Ave. in St. Louis, MO 63136.
- The Dropbox account reported in CyberTip #96532238 was registered on October 31st, 2015, with a verified email address of "rollins4028@gmail.com" and Screen/Username of "Ron Rollins". As such, the surname of "Rollins" used to register the account is the same last name as that of Shannon Jerome Rollins.
- The IP address of 174.85.0.236 logged by Dropbox for the reported account registered with the Screen/Username of "Ron Rollins" was an IP address assigned at the time to the Charter account for internet services at the residence located at 5416 Hamilton

Ave. in St. Louis, MO 63136. This Charter account was registered to an individual named Shannon Rollins.

- According to both the Charter subpoena response information, as well as the information provided during the utility services inquiry with Ameren UE, it appeared both internet and utility services were set up by the registrant, Shannon Rollins, in November of 2020 for the residence located at 5416 Hamilton Ave.

19. Based upon the above noted comparisons, this affiant reasonably concluded the following:

- That Shannon Jerome Rollins was the individual who registered both the Ameren UE and Charter internet accounts for the residence located at 5416 Hamilton Ave.

- Despite listing a home address of 4100 Carrollton Ct., Apt #B, in Bridgeton, MO 63044, on his most recent sex offender registration submission, Shannon Jerome Rollins most likely resided at 5416 Hamilton Ave. As such, this affiant reasonably concluded Shannon Jerome Rollins intentionally failed to register his correct home address as part of his sex offender registration. Furthermore, it appeared he intentionally failed to do so for multiple registration submissions based upon information indicating Shannon Jerome Rollins had most likely moved into the residence located at 5416 Hamilton Ave. sometime in November of 2020, yet he never listed this address on his required sex offender registration.

- Despite listing himself as possessing only a singular mobile phone number of (209) 737-1380 on his sex offender registration submission for June 28th, 2021, it appeared Shannon Jerome Rollins possessed an additional mobile phone or alternate mobile phone number of (314) 688-3320. This conclusion was based upon Shannon

Jerome Rollins's provision of this phone number to register both the Ameren UE and Charter accounts for services at the residence located at 5416 Hamilton Ave in November of 2020. As such, this affiant reasonably concluded Shannon Jerome Rollins again intentionally failed to register this phone number on multiple occasions as part of his required sex offender registration submissions.

- Despite listing himself as possessing only a singular email address of "lookingforgiga.s.a.p@gmail.com" and online/social media account registered with Facebook, Shannon Jerome Rollins also possessed at least one Dropbox account and an additional email account registered with the email address of "rollins4028@gmail.com", both of which he possessed since October of 2015 according to the registrant information provided within the CyberTip for the reported Dropbox account. As such, this affiant reasonably concluded Shannon Jerome Rollins again intentionally failed to register these two online accounts on multiple occasions as part of his required sex offender registration submissions.
- Based upon the reasonable conclusion Shannon Jerome Rollins was the owner and user of the reported Dropbox account, in concurrence with consideration of his past sexual offense committed against a 10-year-old female child, this affiant further reasonably concluded Shannon Rollins was most likely the person responsible for the video file of child pornography uploaded to the reported Dropbox account.

20. On February 16th, 2022, this affiant prepared a St. Louis County search warrant for the residence located at 5416 Hamilton Ave. in St. Louis, MO 63136. The search warrant was subsequently presented to and granted by the Honorable Judge Albus of Division 19 of the Circuit Court of the County of St. Louis in the State of Missouri.

21. Later on February 16th, 2022, members of the St. Louis County Police Department's Tactical Operations Unit executed the search warrant at the home located at 5416 Hamilton Ave. Upon executing the warrant, members of the unit forced entry into the home due to the failure of any residents to answer the door following several loud announcements.

22. After acquiring entry into the residence, officers began a perimeter sweep of the home, during which time they encountered a sole occupant, who was discovered to be nude from the waist down and emerging from the doorway of the main level's northeast bedroom. This individual was later identified as Shannon Rollins. After securing Shannon Rollins, the officers continued with the sweep. As they did so, the officers entered the northeast bedroom from which Shannon Rollins had emerged and observed the room was not occupied any further, as well as noted a shotgun, later discovered to be fully loaded but without a cartridge in the chamber, lying atop the only bed within the room. Lastly, these same officers further observed a computer monitor atop a desk in the bedroom, which appeared to be powered on and actively in use.

23. Once the sweep was concluded, this affiant, along with Detective John Halliday, DSN 3442, of the St. Louis County Police Department's Special Investigations Unit, entered the home and approached Shannon Rollins.

24. This affiant requested Shannon Rollins accompany this affiant and Det. Halliday to an unmarked police vehicle in order for Shannon Rollins and this affiant to speak privately regarding the investigation. He proceeded to consent to the request, at which time Shannon Rollins was escorted to the vehicle.

25. Once everyone was situated in the vehicle, this affiant advised Shannon Rollins of his rights as set forth per Miranda. In response, Shannon Rollins affirmed he understood his rights and expressed his desire to understand the presence of law enforcement personnel at the

residence. As such, this affiant explained an investigation was being conducted in regards to suspicious internet activity that appeared to be occurring at his residence of 5416 Hamilton Ave. In response, Shannon Rollins argued he did not reside at the home but, rather, stayed there on occasion; however, when this affiant inquired as to the address of his actual residence, he answered he presently lived at "4100 Carrolton". When this affiant further inquired as to an apartment number for his alleged home, as well as the zip code for that address, Shannon Rollins was unable to recall both. Additionally, as he and this affiant continued to discuss the residence located at 5416 Hamilton Ave., he explained he was currently the only individual present at the home, but claimed another person identified as "Tony" also lived there and that "Tony" was the actual homeowner.

26. This affiant next spoke to Shannon Rollins regarding the internet and utility services established for that residence. During this discourse, Shannon Rollins explained the home was equipped with internet service by Charter communications; however, Shannon Rollins expressed confusion as to who was responsible for paying for that internet service. This affiant next inquired as to who was responsible for payment for the electric services at the residence, to which Shannon Rollins asserted "Tony" paid some of the bills, but expressed uncertainty as to which ones he paid. In response, this affiant questioned Shannon Rollins as to whether he personally paid for any of the household bills/services at the home, to which Shannon Rollins firmly asserted he did not. As such, this affiant explained to Shannon Rollins that his statement appeared to be false in that his pedigree information had been used to register and pay for both the internet and electrical services at the residence located at 5416 Hamilton Ave. In response, Shannon Rollins argued someone may have used his information to establish those accounts

without his permission or knowledge, while continuing to assert he was not the person responsible for setting up and paying for these services.

27. This affiant next asked Shannon Rollins for his personal phone number to which he answered he did not presently have one; however, he quickly amended his answer and hesitantly provided the phone number of (737) 300-2559. He then corrected his answer by stating his phone number was (559) 737-3002, which this affiant immediately recognized to be similar to, but different from, the phone number detailed on his sex offender registration, that of (209) 737-3002. This affiant next requested Shannon Rollins to provide his email address, to which he answered he could not recall it. As such, this affiant referred to the subpoena response information received for the Charter internet service established at the home and inquired if it began with “lookingforgiga.s.a.p”, to which he stated it was. This affiant then inquired as to the phone number of (314) 688-3320, which had also been used to register the Charter account, in response to which Shannon Rollins identified it as his assigned work phone number.

28. This affiant proceeded to advise Shannon Rollins that Ameren UE had been contacted and a utilities inquiry for the home was made, the results of which indicated the Ameren UE account was also registered with Shannon Rollins’s personal information, to include the last four digits of his social security number, “4346”. This affiant then expressed disbelief that the supposed homeowner, “Tony”, possessed knowledge of, and had utilized, Shannon Rollins’s personal identification information, to include the last four digits of his social security number, to establish both the electrical and internet services for the home. In response, Shannon Rollins stated he could not explain how his information had been used to set up these accounts, but repeatedly claimed he was not the individual responsible for having done so.

29. This affiant subsequently advised Shannon Rolins that while the investigation concerned his failure to register as a sex offender, it primarily centered upon internet activity involving child pornography that appeared to be occurring at the residence. Upon announcing this, Shannon Rollins repeatedly denied possessing any knowledge regarding child pornography or being the individual responsible for the detected activity. This affiant inquired if he was familiar with the Dropbox online storage application, to which he answered he was familiar with it, but denied possessing a Dropbox account. Due to the fact the reported account was registered with a screen/user name sharing the same surname as Shannon Rollins, that of "Rollins", this affiant asked if he had any siblings, to which Shannon Rollins stated he had a brother by the name of "Ron Rollins".

30. This affiant inquired of Shannon Rollins as to whether his brother, Ron Rollins, had ever stayed over and/or visited the residence located at 5416 Hamilton Ave. Shannon Rollins proceeded to answer that Ron Rollins had never stayed overnight nor visited the home. As such, this affiant advised Shannon Rollins that his statement was problematic because his brother's name had been used to register the Dropbox account reported for child pornography activity and that this account had been accessed via the internet service for the residence located at 5416 Hamilton Ave. In response, Shannon Rollins expressed what this affiant perceived to be feigned shock and confusion. Additionally, he was unable to provide a feasible explanation as to how this Dropbox account registered in his brother's name had been accessed and used by a device connected to the home's internet service since his brother had never visited or stayed there.

31. This affiant subsequently confronted Shannon Rollins with her belief that he was being untruthful regarding the majority of the statements he thus far made, as well as regarding

his supposed lack of knowledge regarding the detected internet activity involving child pornography. This affiant then asserted it was her belief that he (1) actually resided at the home located at 5416 Hamilton Ave., and (2) was the individual responsible for the child pornography activity. In response, Shannon Rollins advised he did not wish to make any further statements. As such, this affiant terminated the interview with him.

32. Upon the termination of the interview, this affiant spoke with Sgt. Shanika, who advised forensic triage software had been utilized to triage the desktop computer located in the room in which Shannon Rollins had been discovered and which had been active and powered on at the time of the search warrant's execution. Sgt. Shanika further advised the triage software had detected multiple files of child pornography were contained upon the device, as well as further detected several online and social media accounts that appeared to be registered to Shannon Rollins, which had been accessed via the computer.

33. Sgt. Shanika further advised this affiant that a neighbor identified as Brian Pasquin had responded to the residence of 5416 Hamilton Ave. Sgt. Shanika interviewed Brian Pasquin regarding his knowledge of Shannon Rollins. During this time, Brian Pasquin stated Shannon Rollins was the sole resident of the home located at 5416 Hamilton Ave. Brian Pasquin further stated Shannon Rollins had been residing at the home for approximately 1 ½ years. Lastly, Brian Pasquin asserted Shannon Rollins's brother, who had been fully identified as "Theron Rollins", had never resided at 5416 Hamilton Ave.

34. After concluding his contact with Brian Pasquin, Sgt. Shanika telephoned Shannon Rollins's brother, Theron Rollins, at the phone number of (314) 610-5402. Upon speaking with him, Theron Rollins remarked he never resided at the home located at 5416 Hamilton Ave. Theron Rollins then confirmed Shannon Rollins did actually reside at the

residence of 5416 Hamilton Ave. and not at Theron Rollins's home located at 4100 Carrollton Ct., Apt #B, in Bridgeton, MO 63044.

35. Following the conference with Sgt. Shanika, this affiant placed Shannon Rollins under arrest for the Possession of Child Pornography, as well as for the Failure to Register as a Sex Offender and the Unlawful Possession of a Firearm. This affiant then conveyed Shannon Rollins to the Justice Center where he was booked for the previously-described criminal offenses.

36. While interviewing Shannon Rollins, as well as his subsequent conveyance to the Justice Center, Sgt. Shanika coordinated a search of the residence at 5416 Hamilton Ave., during which items determined to be of evidentiary value were located. All items determined to be of evidentiary value were seized by Detective Hull, DSN 4112, of the St. Louis County Police Department's Crime Scene Unit, and were later placed into evidence at the St. Louis County Police Department's Property Control Unit located at 7900 Forsyth Blvd. in Clayton, MO 63105. These seized items included the following:

- Evidence Item #1: A Winchester 1300 12-gauge Shotgun (SN #L3005624) with 6 Shells
- Evidence Item #2: A Blue Motorolla Cellular Phone in a Black Case
- Evidence Item #3: A Dell Inspiron Computer Tower 660 (SN #BJTP6Z1)
- Evidence Item #4: A PlayStation 4 with Power Cord and Blue Controller
- Evidence Item #5: Three spiral bound style notebooks

37. In July of 2022, a forensic analysis of the devices seized from the residence located at 5416 Hamilton Ave. was conducted. The results of this analysis revealed the following results:

- In regards to the Dell Inspiron Computer Tower, the analysis disclosed 98 images and 8 videos categorized by the forensic examiner as Child Abuse Material, meaning that based on the examiner's experience and training, the files met the statutory definitions of 18 USC 2256.
- In regards to the Blue Motorola Cellular Phone, the device was discovered to be locked. At the time of the forensic analysis, bypass was not available. Additionally, the examiner noted future software/hardware updates may allow lock bypass; therefore, the examiner recommended to retain the device as evidence.

38. The device has remained in the custody of law enforcement since February 16th, 2022, and has been secured, stored and preserved in a manner such that it, to the extent material to this investigation, is likely to retain much of the data it contained at the time it was seized. Meanwhile, since 2022, there have been advancements in the tools available for forensic analysis of mobile devices that allow analysts to recover more evidence from a mobile device than previously possible.

39. ROLLINS was indicted in the United States District Court for the Eastern District of Missouri under cause no. 4:23-CR- 00589-MTS/NCC for the offense of receiving child pornography in violation of 18 U.S.C. §2259A(a)(2). This case remains pending.

**CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS**

40. Based upon my training and experience, I have found that child pornography distributors/collectors:

a. receive sexual gratification, stimulation, and satisfaction from actual physical contact with children and/or from fantasies they may have viewing children

engaged in sexual activity or in sexually suggestive poses (in person, in photographs, or other visual media) or from literature describing such activity.

b. collect sexually explicit or suggestive materials (hard-core and soft-core pornography, whether of adults and/or of children) in a variety of media, such as photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media that they use for their own sexual arousal and gratification. Further, they commonly use this type of sexually explicit material to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, and to demonstrate the desired sexual acts.

c. almost always possess and maintain their material (pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, child erotica,1 etc.) in the privacy and security of their homes or some other secure location. Child pornography distributors/collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and video tapes for many years. Additionally, there is a probability that suspects may maintain a portion of his collection of child pornography in a hard form such as pictures printed from computer files.

d. Child pornography traders often correspond and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

e. Distributors/collectors who collect sexually oriented pictures of minors generally prefer not to be without their child pornography and/or child erotica for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

41. Based on the training and experience described above, I believe the following to be true:

a. Child pornographer collectors maintain their collections in a safe, secure environment, such as his computer and surrounding area, because this material is illegal, difficult to obtain, and difficult to replace. These collections are maintained indefinitely and are kept close by, usually at their residence, to enable the collector to view his collection, which he values highly.

b. Based on the foregoing and all the details of this investigation, I am of the opinion that ROLLINS is maintaining a collection of child pornography on the Device.

c. In addition, child pornography collectors often correspond and/or meet others to share information and materials; rarely destroy correspondence from other preferential child pornographers; conceal such correspondence as they do their sexually explicit material and often maintain lists of names, addresses and telephone numbers of individuals with whom they have been in contact and who share the same interest in child pornography.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

42. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

43. There is probable cause to believe that things that were once stored on the **Device** may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Digital information on a computer, mobile phone, tablet, or other similar electronic media can be saved or stored on the device intentionally, i.e., by saving an e-mail as a file, or saving the location of one's favorite websites such as "bookmarked" or "favorite" files. Digital information can also be retained unintentionally, such as traces of the path of an electronic communication that may be automatically stored in many places (e.g., temporary files or internet Service Provider client software, among others). Applications operating on electronic devices also store data about the device user, times and locations of when an application may be operated by the user, and other data related to the general use of the application (such as a photo, a message, a search, etc.)

c. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being

used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

d. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

e. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

44. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat

programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

45. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

46. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

47. Because this warrant seeks only permission to examine a Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

48. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, *i.e.*, post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit

and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

I state under the penalty of perjury that the foregoing is true and correct.

Det. Amy S. Erwin
AMY ERWIN
Task Force Officer
FBI

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on this 23rd day of January 2025.

Patricia L. Cohen
HONORABLE PATRICIA L. COHEN
United States Magistrate Judge

## ATTACHMENT A

## 4:25 MJ 6006 PLC

### Property to Be Searched

The property to be searched is a Blue 32 GB Motorola Moto G Play Model MC36E Cellular Telephone IMEI: 351647110692061 (hereinafter "the Device"). The Device is currently located and securely stored at the St. Louis County Police Department at 7900 Forsyth Blvd, Clayton, MO 63105 within the Eastern District of Missouri.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

<u>**ATTACHMENT B**</u>

<u>**4:25 MJ 6006 PLC**</u>

**Properties to be Seized**

1. All records on the Device described in Attachment A that relate to violations of **Title 18, United States Code, Section 2259A (TARGET OFFENSES)** and involve **SHANNON ROLLINS**, including:

a. SMS and/or MMS messages, voicemails, or other communications involving the TARGET OFFENSES;

b. pictures, videos, voicemails or any other media identifying owner and co-conspirators, associates depicting activities involving the TARGET OFFENSES;

c. any information recording cellular device owner or user's travel, location information or GPS surrounding the dates of the TARGET OFFENSES;

d. evidence indicating how and when the Cellular Device was accessed or used to determine the chronological context of access, use, and events relating to crime under investigation and to the user;

e. evidence indicating the user's state of mind as it relates to the crime under investigation;

f. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Cellular Device;

g. evidence of the times the Cellular Device was used;

h. passwords, encryption keys, and other access devices that may be necessary to access the Cellular Device;

i. records of or information about Internet Protocol addresses used by the Cellular Device;

j. records of or information about the Cellular Device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k. contextual information necessary to understand the evidence described in this attachment.

l. Social media applications and access as it relates to the TARGET OFFENSES

m. evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

n. images, videos and other data related to child sexual exploitation as well as all evidence and data tending to show the identity of the individual who possessed, received, distributed, accessed, modified, produced or otherwise interacted with such child sexual exploitation material;

o. data and evidence of internet use, data downloads, web browser searches and data file creation and information related to child sexual exploitation material;

p. evidence of communications and/or the exchange of message, images, video and other data of a sexual nature with or concerning minors.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.